UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT D. DENKEWALTER, as independent executor of the estate of Kim Denkewalter, deceased<br><br>        Plaintiff,<br><br>  v.<br><br>JOHN THOMAS, et al.,<br><br>        Defendants. | No. 1:20-CV-05013<br><br>Judge Edmond E. Chang |

**MEMORANDUM OPINION AND ORDER**

When resigning as a manager of real-estate company Freedom Development Group, LLC (FDG), Kim Denkewalter entered into a written contract with FDG to relinquish almost all of his membership interest in FDG and its portfolio companies. R. 33, Second Am. Compl. ¶¶ 51, 54.[1] In exchange for giving up his membership interests, Denkewalter allegedly was supposed to receive a payment of roughly $280,000. *Id.* ¶ 54. But he alleges that he never received this payment. *Id.* ¶¶ 54, 57.

So Denkewalter sued FDG, its portfolio companies, and its remaining managers.[2] He brought fraud, contract breach, and fiduciary duty breach claims, as well as a claim under the Racketeer Influenced and Corrupt Organizations Act (RICO). *Id.* at 16–23. Though the Defendants then moved to dismiss these claims, the previously

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

[2]The Court has jurisdiction over the federal claim under 28 U.S.C. § 1331 and exercises supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

assigned judge largely denied that motion. *See* R. 78, MTD Op. The Defendants now move for leave to amend their pleadings, most relevantly seeking to add two new counterclaims. R. 138, Defs.' Mot. But Denkewalter counters that these amendments should be barred because they are untimely and futile. R. 144, Pl.'s Resp. Br. at 6–11. Denkewalter is incorrect that the amendments are untimely and is also incorrect that the first proposed counterclaim is futile. But he is correct that the second proposed counterclaim (a claim for breach of oral contract) is futile. So leave to amend is granted with respect to all of the proposed amendments other than the breach of oral contract counterclaim and affirmative defense.

## I. Background

Kim Denkewalter served as a manager and minority-owning member of FDG, a real-estate portfolio company. Second Am. Compl. ¶ 34. But on September 13, 2018, Denkewalter resigned from his role as a manager. *Id.* Pursuant to a written contract with FDG, Denkewalter agreed to relinquish almost all of his membership interest in the company and its portfolio companies in exchange for a lump-sum payment of roughly $280,000. *Id.* ¶ 54. But FDG allegedly never paid Denkewalter. *Id.* Also, Denkewalter says that FDG failed to pay him around $85,000 for credit-card charges that the company and its managers racked up on cards under Denkewalter's name. *Id.* ¶ 57.

So Denkewalter brought this lawsuit against FDG, its remaining managers, and its portfolio companies, alleging that the Defendants breached their contract with Denkewalter and committed fraud and breaches of fiduciary duty. Second Am. Compl.

at 16–20. Adding to the complexity of the case, Denkewalter also claimed that the Defendants violated RICO, asserting that FDG and its portfolio companies engaged in racketeering by, for example, allegedly misappropriating refunded loan money and falsely promising to buy Denkewalter out of his membership interests. *Id.* at 20–23.

The Defendants then moved to strike certain allegations from the Second Amended Complaint and moved to dismiss for failure to state a claim. R. 47, Certain Defs.' Mot. to Strike and Dismiss. The previously assigned judge denied the motion to strike and almost entirely denied the motion to dismiss. *Id.* at 2. Now, the Defendants move to amend their answer, most relevantly seeking to add two counterclaims. Defs.' Mot. The first counterclaim alleges that Denkewalter committed fraud by overcharging the Defendants for legal services that he provided to FDG. *Id.* at 28–30. And the second counterclaim alleges that Denkewalter violated an oral agreement that he reached with the Defendants to assign his real estate license to one of FDG's portfolio companies. *Id.* at 30–31. That second counterclaim is also presented as a proposed third affirmative defense. *Id.* at 27. Denkewalter opposes those additions, arguing that the amendments come too late and that regardless, the amendments would be futile because the new counterclaims would not withstand a motion to dismiss. Pls.' Resp. Br. at 6–11.

## II. Analysis

Denkewalter begins by arguing that the Defendants waited too long to amend their pleadings and thus should be barred from amending. *Id.* at 6–8. This argument fails. Yes, the Court set a Civil Rule 16(b) deadline to add parties or amend pleadings

3

for January 8, 2025. R. 121, Sept. 6, 2024, Minute Entry. That means that after January 8, any amendment would have to satisfy the heightened standard in Rule 16(b), which requires good cause to amend the pleadings. But the Defendants filed their motion to amend on December 19, 2024, before the Rule 16(b) deadline. Defs.' Mot. So good cause is not required to amend the pleadings.

Instead, Rule 15(a)(2)'s standard governs whether the Defendants may amend. Under that rule, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). That means that courts should give leave to amend unless there is compelling reason to deny amendment, such as a party's unjustifiable delay in presenting its motion to amend to the court. *Gandhi v. Sitara Cap. Mgmt., LLC*, 721 F.3d 865, 868–69 (7th Cir. 2013).

Here, the Defendants did not unjustifiably delay bringing their motion to amend, so their amendment is not barred on timing grounds. Although more than one year passed between the time when the Defendants filed their answer and when they moved to amend, much of that delay happened because the case was stayed after the original Plaintiff passed away. R. 82, Answer; R. 91. Jan. 9, 2024, Minute Entry; Defs.' Mot. Thus, a large chunk of the delay was for reasons outside of the Defendants' control. Plus, the Defendants' motion to amend was filed well before the fact-discovery deadline of May 30, 2025. Defs.' Mot.; R. 126, Nov. 7, 2024, Minute Entry. So there was no unreasonable delay in seeking to amend, and Denkewalter's argument that amendment should be barred as untimely is unsuccessful.

Next, Denkewalter argues that leave to amend should be denied because amendment would be futile. Pls.' Resp. Br. at 8–11. In particular, he contends that the additional counterclaims would not withstand a motion to dismiss or strike. *Id.* at 8; *see Gandhi*, 721 F.3d at 868–69. That argument fails with respect to the first counterclaim but succeeds with respect to the second.

In their first counterclaim, the Defendants allege that Denkewalter committed fraud against FDG. Defs.' Mot. at 28. They note that part of the payment that Denkewalter was owed according to his contract with FDG was meant to compensate him for legal services that he provided to the company. *Id.* at 29. But the Defendants assert that Denkewalter misrepresented that he had not been paid for those legal services. *Id.* They claim that Denkewalter was double-billing for his services, charging his other clients as well as the Defendants for the same legal work. *Id.* The Defendants then allege that they were fraudulently induced into entering the contract with Denkewalter based on this misrepresentation that he had not been paid for the legal work he provided FDG. *Id.* at 29–30.

Denkewalter responds that this counterclaim fails because nothing in the written agreement between him and FDG says anything about the calculation or amount of attorney's fees owed to him. Pl.'s Resp. Br. at 8–9. But whether or not there is mention of the calculation of legal fees in the contract is irrelevant to whether the Defendants successfully state a fraud claim. To state a fraud claim, the Defendants must allege that (1) Denkewalter made a false statement of material fact; (2) he knew or believed that the statements were false, or the statements were made with a

5

reckless disregard of whether they were true or false; (3) the statements were made with the intent to induce action; (4) the Defendants reasonably believed the statements and justifiably acted in reliance on those statements; and (5) the Defendants suffered damages as a result. *Kapelanski v. Johnson*, 390 F.3d 525, 530–31 (2004). The Defendants' counterclaim properly alleges all of these elements.

Specifically, the Defendants allege that Denkewalter intentionally, falsely told the Defendants that he had not been paid for his legal services, which reasonably induced the Defendants to sign the payment contract with Denkewalter, costing the Defendants more than $50,000. Defs.' Mot. at 28–30. Thus, it does not matter whether the contract laid out the specifics of the attorney's fees calculation; the Defendants are still able to properly state a fraud claim. Also, the contract does state that FDG "currently owes [Denkewalter] attorney's fees which will be paid from the monies due on Exhibit A." R. 138, Defs.' Mot. Exh. A at 44 (PDF page number). That supports the Defendants allegation that they agreed to pay Denkewalter attorney's fees as part of the contract. In sum, the Defendants properly state a fraud claim, and Denkewalter's argument regarding the calculation of attorney's fees fails.

Next, Denkewalter asserts that the fraud counterclaim is futile because it is not alleged with sufficient particularity, as required by Civil Rule 9(b). Pl.'s Resp. Br. at 10. He is correct that the heightened pleading standard of Rule 9(b) applies because this is a fraud claim. *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (2018). But Denkewalter is wrong that the Defendants do not allege the claim with enough particularity. Under Rule 9(b), the Defendants must "describe

6

the who, what, when, where, and how of the fraud—the first paragraph of any newspaper story." *Id.* (cleaned up).³ The Defendants successfully do that here. Again, they allege in their fraud counterclaim that before the parties entered their written payment contract, Denkewalter defrauded the Defendants by intentionally misstating that he had not been paid for legal services in order to induce the Defendants into signing the contract. Defs.' Mot. at 28–30; R. 138, Fraud Counterclaim ¶¶ 16–19. The Defendants also allege that this fraud caused them to suffer more than $50,000 in damages. Defs.' Mot. at 30; Fraud Counterclaim ¶ 20. These details provide the "who, what, when, where, and how" of the fraud, so the Rule 9(b) standard is satisfied. The Defendants are free to amend their pleadings to include the fraud counterclaim.

Moving on to the second counterclaim, the Defendants allege that Denkewalter breached an oral contract with them. Defs.' Mot. at 30–31; R. 138, Oral Agreement Breach Counterclaim ¶ 24. Specifically, the Defendants claim that in exchange for them performing their side of the written payment contract, Denkewalter orally agreed to assign his real estate license to one of FDG's portfolio companies. Defs.' Mot. at 30; Oral Agreement Breach Counterclaim ¶¶ 23, 25. But he allegedly never made the promised assignment, thereby breaching his oral contract. Defs.' Mot. at 30; Oral Agreement Breach Counterclaim ¶ 24.

---

³This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

Denkewalter argues that this counterclaim fails and is futile because the parol-evidence rule bars adding this oral contract as an additional term to the fully integrated written payment contract. Pl.'s Resp. Br. at 10. That is correct. Under Illinois law, when "a contract is fully integrated, the parol-evidence rule bars evidence of prior or contemporaneous agreements within the scope of the written contract." *West Bend Mut. Ins. Co. v. Procaccio Painting & Drywall Co., Inc.*, 794 F.3d 666, 673 (7th Cir. 2015). And a contract is "fully integrated when it is intended by the parties to be a complete and exclusive statement of the agreement's terms." *Id.* Here, the written contract between the Defendants and Denkewalter is fully integrated because it contains an integration clause that states that "[t]his Agreement … embodies the entire agreement and understanding of the Parties with respect to its subject matter and supersedes all prior discussions, agreements, and undertakings between the Parties." Defs.' Mot. Exh A ¶ 9. And the prior oral agreement between the parties is within the scope of the written contract because the Defendants allege that Denkewalter agreed to assign his real estate license in exchange for the Defendants performing their obligations under the written agreement. Defs.' Mot. at 30. Thus, the alleged oral agreement was part of Denkewalter's consideration for the written agreement. So under the parol-evidence rule, the prior oral agreement is barred and cannot be considered an additional term to the written agreement between Denkewalter and the Defendants. Because the oral agreement is barred, the Defendants cannot state an oral contract breach claim. This renders the second counterclaim futile, so the Court denies leave to amend the pleadings to add this specific second counterclaim. Also, the

8

counterclaim for breach of oral contract is repeated as the Defendants' proposed third affirmative defense, so leave to add that third affirmative defense is also denied.

### III. Conclusion

The Defendants' motion for leave to file an amended answer, affirmative defenses, and counterclaims, R. 138, is granted in part and denied in part. The Defendants may make all of the amendments that they propose other than the counterclaim for breach of oral contract and the related affirmative defense. That oral-contract counterclaim and the affirmative defense are futile, so leave to amend is denied with respect to those changes. For clarity of the record, the Defendants shall file the pleading as a separate docket entry (there is no need to make conforming changes, this Opinion operates against it). Denkewalter must answer the counterclaim by September 2, 2025.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: August 11, 2025